In the
# United States Court of Appeals
# for the Fifth Circuit

GAS TRANSMISSION NORTHWEST, LLC,

*Petitioner*,

v.

FEDERAL ENERGY REGULATORY COMMISSION,

*Respondent*,

CANADIAN ASSOCIATION OF PETROLEUM PRODUCERS, COLUMBIA RIVERKEEPER, ROGUE CLIMATE, STATES OF WASHINGTON AND OREGON,

*Intervenor-Respondents*.

On Petition for Review of an Order
the Federal Energy Regulatory Commission
No. CP22-2-000, CP22-2-001

## PETITIONER'S OPPOSITION TO INTERVENORS WASHINGTON AND OREGON'S MOTION TO DISMISS OR TRANSFER VENUE

Johannah Walker*
HOGAN LOVELLS US LLP
4 Embarcadero, Suite 3500
San Francisco, CA, 94111
(415) 374-2499

*\* Admitted in the District of Columbia and Arkansas. Practice supervised by principals of the Firm admitted in California.*

May 6, 2024

Sean Marotta
Matthew J. Higgins
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004
(202) 637-4881
sean.marotta@hoganlovells.com

*Counsel for Gas Transmission Northwest, LLC*

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

James Holt
Katherine Ann Wade
Betts & Holt LLP

*Counsel for Canadian Association of Petroleum Producers*

Jan Hasselman
Earthjustice

*Counsel for Columbia Riverkeeper and Rogue Climate*

Robert H. Solomon
Angela Gao

*Counsel for the Federal Energy Regulatory Commission*

Sean Marotta
Matthew Higgins
Johannah Walker
Hogan Lovells US LLP

*Counsel for Gas Transmission Northwest, LLC*

Paul Garrahan
Attorney-in-Charge, Oregon Department of Justice
Steve Novick
Special Assistant Attorney General, Oregon Department of Justice

*Counsel for the State of Oregon*

Megan Sallomi
Assistant Attorney General, Washington State Attorney General's Office

*Counsel for the State of Washington*

American Gas Association

Bp Canada Energy Marketing Corp.

Cascade Natural Gas Corporation

Intermountain Natural Gas Company

MDU Utilities Group and MDU Resources, Inc.

Northwest Natural

Pacific Gas and Electric Company

Puget Sound Energy, Inc.

Shell Energy North America, L.P.

TC Energy Corporation

Tourmaline Oil Marketing Co.

/s/ Sean Marotta
Sean Marotta

**TABLE OF CONTENTS**

Page

CERTIFICATE OF INTERESTED PERSONS ...................................................i

TABLE OF AUTHORITIES ...............................................................iv

INTRODUCTION .........................................................................1

BACKGROUND ..........................................................................2

ARGUMENT ............................................................................6

    I.    THE MOTION TO DISMISS SHOULD BE CARRIED WITH THE CASE ......................6

        A.    Summary dismissal is inappropriate .....................................6

        B.    GTN has standing .......................................................8

        C.    GTN's challenge is ripe ................................................13

    II.    THE STATES CANNOT JUSTIFY DISPLACING GTN'S CHOSEN FORUM ...................16

        A.    GTN is substantially aggrieved by FERC's denial of predetermination .....16

        B.    The remaining Section 2112(a)(5) factors do not warrant transfer to the D.C. Circuit .....20

CONCLUSION ..........................................................................23

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

Page

**CASES:**

*Alabama Mun. Distrib. Grp. v. FERC*,
312 F.3d 470 (D.C. Cir. 2002) ............................................................... 12

*Biden v. Nebraska*,
143 S. Ct. 2355 (2023) ........................................................................... 9

*Brooklyn Union Gas Co. v. FERC*,
190 F.3d 369 (5th Cir. 1999) ........................................................... 11, 15

*Buckeye Partners, L.P. v. FERC*,
No. 22-60100, 2022 WL 1528311 (5th Cir. May 13, 2022) ...................... 16, 20

*Carpenters Indus. Council v. Zinke*,
854 F.3d 1 (D.C. Cir. 2017) .................................................................. 9

*Clinton v. City of New York*,
524 U.S. 417 (1998) ........................................................................ 10, 11

*Cruz v. Abbott*,
849 F.3d 594 (5th Cir. 2017) ................................................................ 8

*Formaldehyde Institute, Inc. v. U.S. Consumer Product Safety Commission*,
681 F.2d 255 (5th Cir. 1982) ..................................... 19, 20, 21, 22

*General Land Office v. Biden*,
71 F.4th 264 (5th Cir. 2023) ................................................................. 9

*Groendyke Transp., Inc. v. Davis*,
406 F.2d 1158 (5th Cir. 1969) .............................................................. 7

*Gulfport Energy Corp. v. FERC*,
41 F.4th 667 (5th Cir. 2022) ................................................................ 12

*In re FERC*,
___ F. Supp. 3d ___, MCP No. 175, 2024 WL 1596933
(JPML Apr. 11, 2024) ........................................................................ 5, 6

Page

*In re Parmalat Sec. Litig.*,
  No. 04 MD 1653(LAK), 2007 WL 1169217 (S.D.N.Y. Apr. 18, 2007)........... 17

*International Union, United Auto. Aerospace & Agric. Implement
  Workers of Am., UAW-AFL-CIO v. NLRB*,
  373 F.2d 671 (D.C. Cir. 1967)..................................................................... 17

*K.P. v. LeBlanc*,
  627 F.3d 115 (5th Cir. 2010) ....................................................................... 13

*Legacy Cmty. Health Servs., Inc. v. Smith*,
  881 F.3d 358 (5th Cir. 2018) ....................................................................... 10

*Liquor Salesmen's Union Local 2 of State of N.Y. v. NLRB.*,
  664 F.2d 1200 (D.C. Cir. 1981)........................................................ 17, 18, 20

*Midcoast Interstate Transmission, Inc. v. FERC*,
  198 F.3d 960 (D.C. Cir. 2000)..................................................................... 11

*New York State Electric & Gas Corp. v. FERC*,
  177 F.3d 1037 (D.C. Cir. 1999)................................................................... 15

*Oil, Chem. & Atomic Workers Local Union No. 6-418, AFL-CIO v. NLRB*,
  694 F.2d 1289 (D.C. Cir. 1982)................................................................... 18

*Pearson v. Holder*,
  624 F.3d 682 (5th Cir. 2010) ....................................................................... 13

*Public Serv. Comm'n v. FPC*,
  472 F.2d 1270 (D.C. Cir. 1972).............................................................. 17, 21

*Stewart v. Entergy Corp.*,
  No. 22-30132, 2022 WL 17579883 (5th Cir. Dec. 12, 2022) ........................ 7

*Tenneco Oil Co. v. EPA*,
  592 F.2d 897 (5th Cir. 1979) ....................................................................... 16

*Tennessee Valley Municipal Gas Ass'n v. FERC*,
  140 F.3d 1085 (D.C. Cir. 1998)................................................................... 15

*Texas v. Nuclear Regulatory Comm'n*,
78 F.4th 827 (5th Cir. 2023) ................................................................. 7

*Texas v. United States*,
497 F.3d 491 (5th Cir. 2007) ....................................................... 13, 14

*Texas v. United States*,
809 F.3d 134 (5th Cir. 2015) ........................................................... 13

*United States v. Lipscomb*,
66 F.4th 604 (5th Cir. 2023) ........................................................... 13

*United States v. Mendoza*,
464 U.S. 154 (1984).......................................................................... 21

*United States v. Williams*,
No. 22-40185, 2023 WL 234772 (5th Cir. Jan. 18, 2023) ................ 7

*Young Conservatives of Texas Found. v. Smatresk*,
73 F.4th 304 (5th Cir. 2023) ........................................... 8, 9, 12, 13

**ADMINISTRATIVE PROCEEDINGS:**

*Certification of New Interstate Nat. Gas Pipeline Facilities*,
1999 WL 718975, 88 FERC ¶ 61,227 (Sept. 15, 1999) ..................... 4

*Gas Transmission Nw., LLC*,
185 FERC ¶ 61,035 (Oct. 23, 2023) ..................................... 2, 3, 4, 5

*Gas Transmission Nw., LLC*,
187 FERC ¶ 61,023 (Apr. 16, 2024)........................................... 2, 5

**STATUTES:**

15 U.S.C. § 717r(b)............................................................... 16, 21, 22

15 U.S.C. § 717r(d)(1) ................................................................... 22

28 U.S.C. § 2112(a)(1).................................................................... 6

Page

28 U.S.C. § 2112(a)(5) ................................................................. 16

# INTRODUCTION

One thing is clear: Intervenors Columbia Riverkeeper, Rogue Climate (collectively, Riverkeeper), Oregon and Washington, do not want to litigate their petitions for review in this Court. This motion is the States' and Riverkeeper's latest gambit, seeking to have Gas Transmission Northwest (GTN)'s petition for review dismissed for lack of standing or ripeness or transferred to their preferred forum in the D.C. Circuit. But neither Article III nor 28 U.S.C. § 2112(a)(5)'s discretionary transfer factors support displacing GTN's valid choice to lay venue in this Court, where it is headquartered.

The States contend that GTN lacks standing to challenge the Federal Energy Regulatory Commission's (FERC or the Commission) orders and that the challenge is unripe. Those are arguments that should await a merits panel's determination, particularly because the bases for GTN's standing and immediate review that the States have hypothesized are not the ones that GTN actually advances. More fundamentally, GTN faces a host of concrete harms from FERC's order to deny the predetermination of rolled-in rates. The facts are fixed, and GTN would suffer needless and significant harm if judicial review were delayed; the Court should decide now whether FERC arbitrarily denied predetermination.

The States alternatively contend that the Court should transfer this case to the D.C. Circuit. But the States misread this Court's and other courts of appeals'

case law.  GTN is substantially aggrieved even though it (necessarily) has a greater interest in defending FERC's certificate order than it does in challenging FERC's denial of a predetermination of rolled-in rates; the D.C. Circuit has no relevant expertise in the dispute between these parties that warrants transfer to it; and the location of counsel, the agency, and the challenged project are not considerations under this Court's case law or the Natural Gas Act.  The States cannot overcome the presumption that the venue should remain where it was first laid.

## BACKGROUND

1.  GTN owns and operates a natural-gas pipeline system extending from the Idaho-Canada border to the Oregon-California border.  *Gas Transmission Nw., LLC*, 185 FERC ¶ 61,035, at P 2 (Oct. 23, 2023) (Certificate Order).  In March 2020, GTN gave prior notice that it would replace three 50-plus-year-old compressor units.  *Id.* PP 4, 14-16 & n.20; *Gas Transmission Nw., LLC*, 187 FERC ¶ 61,023, at PP 13-15 (Apr. 16, 2024) (Rehearing Order).

GTN's shippers did not protest the prior-notice filing, and GTN placed the three replacement compressor units into service in October and November 2021.  Certificate Order P 15 & n.20.  Although the replacement units were appropriately sized, because units are only manufactured at specific horsepower levels, these units were capable of operating at a horsepower greater than what GTN was then

certificated for.  GTN implemented software controls so that the units would not operate at greater than the previously certificated horsepower levels.  *Id.* P 16.

2.  GTN then designed the GTN XPress Project, which would significantly increase the capacity of its system to meet rising demand for natural gas.  *Id.* PP 1, 3.  GTN proposed to lift the artificial horsepower restrictions on the three new compressors, helping GTN's mainline system to provide an additional 150,000 dekatherms per day of incremental firm transportation service.  *Id.* PP 1, 3-4.

In October 2021, GTN applied to FERC for a certificate of public convenience and necessity for the Project.  *Id.* P 1.  To prove the market's need for the Project's additional capacity, GTN presented executed precedent agreements with three unaffiliated expansion shippers that fully subscribed the Project's capacity over its first 30 years.  *Id.* PP 5, 39.  Each agreement also included negotiated rates and a sunset in-service provision permitting the shipper to cancel without penalty if GTN did not place the Project into service by November 1, 2024.  *See* Gibbon Decl. ¶ 3.

3.  FERC granted the Project a certificate of public convenience and necessity, finding it would provide consumers better access to natural gas at lower costs and that the public benefits outweighed any adverse impacts.  Certificate Order PP 18-39, 98-101.  The Commission also found that the Project's illustrative

3

rates were lower than the overall system rates, meaning that GTN's existing customers would not subsidize the expansion. *Id.* P 17.

But the Commission denied GTN's request for a predetermination of rolled-in rates. *Id.* at PP 44, 53. "Rolled-in" pricing permits a pipeline to incorporate the costs and revenues of an expansion into the overall rates charged to existing customers, with existing and expansion customers paying the same rate. *See Certification of New Interstate Nat. Gas Pipeline Facilities*, 1999 WL 718975, 88 FERC ¶ 61,227, 61,746 (Sept. 15, 1999) (Certificate Policy Statement).

Consistent with FERC policy, GTN explained that the costs of replacing its three compressors—which were already being borne by existing shippers consistent with the Commission's Certificate Policy Statement—meant that the Project offered cheap expansibility and that rolled-in rates were appropriate. Certificate Order PP 44, 48. Moreover, GTN explained that because the Project enables cheap expansibility, FERC should follow its policy to "always" resolve rate issues "in advance, before the construction of the pipeline." *Certification of New Interstate Nat. Gas Pipeline Facilities*, 88 FERC at ¶ 61,746. GTN's competitors intervened and protested, arguing that FERC should defer ruling on the rate question until it determined whether any part of GTN's earlier compressor-replacement costs should for some reason be allocated to the expansion Project. Certificate Order PP 45-46, 49.

FERC took the bait. It held that even though GTN's compressor replacements and their associated costs were proper and pre-dated the application for the Project, some portion of those compressors' horsepower costs still might be allocable to the Project. *Id.* at PP 15 & n.20, 16, 53. FERC refused to grant a predetermination of rolled-in rates so that the parties could be "free to argue in the next rate case that a portion of the compression costs should be assigned to the expansion project," *id.* P 53, a determination it upheld on rehearing, Rehearing Order PP 29-34.

Without rolled-in rates, tens of millions of dollars of GTN's costs would be unrecoverable, making the Project financially not viable unless GTN can re-negotiate rates with its existing or expansion shippers or FERC ultimately rules that rolled-in rates are appropriate. Gibbon Decl. ¶ 8. Therefore, although GTN has been issued a notice to proceed permitting it to commence construction at any time, the company presently plans to delay Project construction until it can re-negotiate rates or FERC ultimately grants GTN's request for rolled-in rates. *Id*. ¶ 10.

4. GTN and Columbia Riverkeeper petitioned for review of FERC's certificate order—GTN in this Court and Riverkeeper in the D.C. Circuit. *In re FERC*, ___ F. Supp. 3d ___, MCP No. 175, 2024 WL 1596933, at *1-3 (JPML Apr. 11, 2024). The Judicial Panel on Multidistrict Litigation concluded that

Riverkeeper's petition was filed outside of 28 U.S.C. § 2112(a)'s 10-day window to trigger a multicircuit lottery, making GTN's petition the only one filed within 10 days of FERC's denial of the parties' rehearing petitions by operation of law. *Id.* at 3-4; *see also* 28 U.S.C. § 2112(a)(1).[1] FERC was therefore required to file the record in this Court and, for "later filed petitions . . . (such as Riverkeeper's petition here), the courts are required to transfer those proceedings" to this Court. *In re FERC*, 2024 WL 1596933, at *4. FERC has since filed the administrative record in this Court, and there is a pending GTN emergency motion—opposed by the States and Riverkeeper—to transfer their D.C. Circuit petitions to this Court.

As part of their efforts to keep this Court from deciding these cases, the States—joined by Riverkeeper—have moved to summarily dismiss GTN's petition or to transfer the petition to the D.C. Circuit under 28 U.S.C. § 2112(a)(5).

## ARGUMENT

### I.   THE MOTION TO DISMISS SHOULD BE CARRIED WITH THE CASE.

#### A.   Summary dismissal is inappropriate.

Summary disposition is appropriate only when "the position of one of the parties is clearly right as a matter of law so that there can be no substantial

---

[1] Washington and Oregon subsequently filed a separate joint petition for review in the D.C. Circuit, which the D.C. Circuit consolidated with Riverkeeper's petition. *See* No. 24-1025 (D.C. Cir.).

question as to the outcome of the case." *Groendyke Transp., Inc. v. Davis*, 406 F.2d 1158, 1162 (5th Cir. 1969). Otherwise, a merits panel should be permitted to carefully assess the Court's jurisdiction with the benefit of full briefing and potentially oral argument. Motions panels therefore routinely order that pre-briefing motions to dismiss for lack of jurisdiction be carried with the case.[2]

The Court should follow that usual path here, particularly because this Court does not require GTN to prove the Court's jurisdiction over its petition until its opening brief. *See Texas v. Nuclear Regulatory Comm'n*, 78 F.4th 827, 835 (5th Cir. 2023). By moving to summarily dismiss before GTN's opening brief, the States have attacked bases for standing that GTN is not asserting. *See infra* pp. 11-12. The more-orderly approach is to allow GTN to prove up its standing and the ripeness of its petition in its opening brief, which the States can then respond to.

In any case, GTN has standing, *infra* pp. 8-13, and its challenge is ripe, *infra* pp. 13-15. The States therefore have not shown that they are "clearly right as a matter of law" that this Court lacks jurisdiction. *Groendyke*, 406 F.2d at 1162. The motion should be carried with the case.

_____

[2] *E.g. United States v. Williams*, No. 22-40185, 2023 WL 234772, at *1 (5th Cir. Jan. 18, 2023) (per curiam); *Stewart v. Entergy Corp.*, No. 22-30132, 2022 WL 17579883, at *1 (5th Cir. Dec. 12, 2022) (per curiam).

**B.** **GTN has standing.**

1. Under the familiar tripartite test, GTN must demonstrate that "(1) it has suffered, or imminently will suffer, a concrete and particularized injury-in-fact; (2) the injury is fairly traceable to the [agency's] conduct; and (3) a favorable judgment is likely to redress the injury." *Cruz v. Abbott*, 849 F.3d 594, 598 (5th Cir. 2017) (citation omitted). The States do not challenge the traceability or redressability, contending only that GTN has not suffered an injury-in-fact. *See* Mot. 11-13.

FERC's refusal to grant GTN a predetermination of rolled-in rates causes GTN two distinct forms of Article III injury. For one, if GTN stands pat with respect to its negotiated rates and FERC ultimately finds that additional costs should be allocated to the Project and thus denies rolled-in rate treatment, GTN stands to lose *tens of millions* in unrecoverable costs. *See* Gibbon Decl. ¶ 8. Rather than take that gamble, GTN is seeking to re-negotiate rates with its existing and expansion shippers, and currently plans to delay Project construction until either it has successfully re-negotiated new rates or is ultimately granted permission to charge rolled-in rates—a decision that will not come for at least 18 months. *See id*. ¶¶ 6, 10, 12.

Forcing GTN to re-negotiate rates with its shippers causes it financial harm—the "quintessential injury upon which to base standing." *Young*

*Conservatives of Texas Found. v. Smatresk*, 73 F.4th 304, 309 (5th Cir. 2023) (citation omitted). Re-negotiating rates will impose additional transactional costs on GTN. *See* Gibbon Decl. ¶ 11. GTN will have to conduct separate negotiations with all three expansion shippers. *Id.* Each set of negotiations will require at least five meetings or conferences, which GTN's chief executives must attend. *Id.* On top of that, outside counsel will have to review and finalize GTN's updated expansion contracts. *Id.* Contract negotiations with GTN's expansion shippers are not part of any judicial process or regulatory adjudication. *Id.* They impose "unrecoverable" operational and transactional "costs," which, standing alone, represent cognizable injury. *General Land Office v. Biden*, 71 F.4th 264, 272 (5th Cir. 2023).

For another, the construction delay caused by FERC's predetermination denial harms GTN three times over. *First*, the delay prevents GTN from putting the Project into service and thus decreases GTN's short-term revenues, a classic pocketbook injury. *E.g.*, *Biden v. Nebraska*, 143 S. Ct. 2355, 2366 (2023). If FERC had granted a predetermination for rolled-in rates, GTN would have begun the Project construction once it received its notice to proceed in April 2024. Gibbon Decl. ¶¶ 7, 14. But no rational commercial actor would risk tens of millions on an uncertain investment. *Carpenters Indus. Council v. Zinke*, 854 F.3d 1, 6 (D.C. Cir. 2017) (Kavanaugh, J.) ("[c]ommon sense and basic economics"

inform the standing analysis).  The expected monthly revenue from GTN's three expansion contracts is approximately $1.3 million.  Gibbon Decl. ¶ 13.  Each day of construction delay postpones the date that GTN can start providing the Project's expansion service and collecting this significant revenue.  *Id.* ¶ 12.

*Second*, the construction delay will give GTN's three expansion shippers additional leverage to re-negotiate more favorable rates or other contract terms. *See id.* ¶¶ 15-17.  A petitioner suffers an Article III injury where it is deprived "of its rightful bargaining position."  *Legacy Cmty. Health Servs., Inc. v. Smith*, 881 F.3d 358, 367 (5th Cir. 2018); *see also Clinton v. City of New York*, 524 U.S. 417, 432 (1998) (elimination of a "bargaining chip" constitutes concrete injury).

If GTN does not place the Project into service by November 1, 2024, its customers will be free to walk away from their precedent agreements without penalty.  *See* Gibbon Decl. ¶¶ 3, 14-15.[3]  If FERC had granted GTN a predetermination of rolled-in rates, GTN would have moved forward with the Project and completed Project construction before November 1, 2024.  *See id.* ¶¶ 7, 14.  But with Project construction now delayed for up to 18 months, GTN's

_____

[3] Although the parties may agree to extend to the sunset date, the November 1, 2024 contractual deadline remains in effect today.  *See* Gibbon Decl. ¶ 15.  It is uncertain what GTN might have to give up to obtain its customers' agreement to an extension.

expansion shippers can now cite their precedent agreements' sunset provision to resist GTN's attempt to secure higher, re-negotiated rates. *See id.* ¶¶ 16-17.

*Finally*, the delay created by FERC's denial of a predetermination injures GTN's market competitiveness. *Clinton*, 524 U.S. at 433 (a petitioner suffers injury-in-fact where governmental action "alter[s] competitive conditions") (citation omitted). Construction delays will postpone the date that GTN's three expansion shippers will be able to transport the natural gas that they have extracted and arranged to sell, raising the prospect that they will suffer short-term losses. Gibbon Decl. ¶ 16. Moreover, FERC's order creates uncertainty surrounding the Project's long-term viability and the expansion shippers' ability to transport gas on the 30-year time horizon that they negotiated for. *Id.* ¶ 17. These conditions make it more likely that GTN's expansion shippers exercise their sunset in-service rights; cancel their precedent agreements; and contract with GTN's competitors to transport their natural gas—exactly the type of harm that this Court and others have held confers standing. *Brooklyn Union Gas Co. v. FERC*, 190 F.3d 369, 374 (5th Cir. 1999); *see also Midcoast Interstate Transmission, Inc. v. FERC*, 198 F.3d 960, 968-970 (D.C. Cir. 2000).

The States' motion does not address these concrete harms, instead attacking strawmen. Mot. 11-13. The States say that confronting new questions in "future legal proceeding[s]" and spending additional time and resources in litigation are

11

not Article III injuries. *Id.* (quoting *Gulfport Energy Corp. v. FERC*, 41 F.4th 667, 676-677 (5th Cir. 2022)). But GTN is not asserting that injury. The States also say that "any precedential effect" of a FERC order is not an Article III injury. Mot. 11 (citing *Alabama Mun. Distrib. Grp. v. FERC*, 312 F.3d 470, 473-474 (D.C. Cir. 2002)). GTN is not asserting that injury, either.

GTN's ability to charge expansion shippers negotiated rates until the rates proceeding concludes does not negate its injury. *See* Mot. 12. GTN negotiated its expansion rates on the reasonable belief that it would be allowed to roll in the costs of the expansion into the rates its existing shippers pay before it built the Project, placing downward pressure on the expansion rates GTN ultimately agreed to. *See* Gibbon Decl. ¶ 5. Those rates are not high enough to cover the costs of the Project plus the costs of the three pre-existing compressor units, meaning that if rolled-in rates are denied, GTN will have to absorb the uncovered costs. *Id.* ¶ 8. Because GTN is now stuck with deflated negotiated expansion rates, FERC's order denying predetermination of rolled-in rates requires GTN to re-negotiate its rates and delay Project construction until these issues are resolved.

This sequence of events does not make GTN's injury "self-inflicted." *Young Conservatives*, 73 F.4th at 309 (citation omitted). That is because the possibility that GTN "could avoid injury by incurring other costs"—not re-negotiating its rates, commencing construction, and placing a reckless multi-million-dollar bet

that its pending rate case will be resolved favorably—"does not negate standing." *Texas v. United States*, 809 F.3d 134, 156-157 (5th Cir. 2015). Instead, an injury is self-inflicted only if it "is so completely due to the plaintiff's own fault as to break the causal chain." *Young Conservatives*, 73 F.4th at 310 (citation omitted). And this Court does not fault challengers for rational business expenditures to manage new risks imposed by governmental action, precisely the harm that GTN asserts here. *See K.P. v. LeBlanc*, 627 F.3d 115, 122 (5th Cir. 2010) (physicians suffered injury-in-fact where newly uncapped medical malpractice liability created pressure to purchase more costly insurance policies, even though no lawsuit had "yet materialized").

### C.   GTN's challenge is ripe.

To determine if a case is ripe, this Court considers "(1) the fitness of the issues for judicial decision, and (2) the hardship to the parties of withholding court consideration." *Texas v. United States*, 497 F.3d 491, 498 (5th Cir. 2007). Both factors cut in GTN's favor.

*First*, issues are fit for judicial decision where "they would not benefit from any further factual development." *Pearson v. Holder*, 624 F.3d 682, 684 (5th Cir. 2010) (citation omitted). All of the facts relevant to the GTN's challenge have already happened. *See United States v. Lipscomb*, 66 F.4th 604, 609 n.4 (5th Cir. 2023) (fitness prong satisfied where "the relevant facts are retrospective in

13

nature"). GTN contends that FERC erred by suggesting that *some* of the costs associated with the replacement compressor units could be allocated to the Project's expansion shippers. Those compressors are already in service, meaning there are no additional facts to adduce. GTN's challenge turns on the "purely legal question" of whether *any* previous system replacement costs can be allocated to shippers on an expansion project completed years later. *Texas*, 497 F.3d at 498-499.

The States emphasize FERC's ruling that there was "a question as to whether the portion of the horsepower being used to support the expansion project is currently in use." Mot. 14-15 (quoting Certificate Order P 53). But the factual question of *how much* compression horsepower the Project uses is separate from the legal question that GTN poses: Whether *any portion* of the costs of the pre-existing compression facilities can be allocated to the expansion shippers. If the Court agrees with GTN that no part of the replacement compressors' costs can be allocated to the expansion shippers, then the additional horsepower used at the stations will be irrelevant.

*Second*, standing and ripeness "often overlap in practice, particularly in an examination of whether a plaintiff has suffered a concrete injury." *Texas*, 497 F.3d at 496. For the same reasons that GTN is concretely harmed by FERC's order

14

denying a predetermination of rolled-in rates, *see supra* pp. 8-13, withholding judicial consideration of GTN's claims is a hardship to GTN.

None of the States' ripeness cases are on point. *See* Mot. 13-17. *Brooklyn Union* held that the pipeline's challenge was unripe because FERC was in the middle of changing its policy on rolled-in rates. *See* 190 F.3d at 374 (noting FERC's position was "uncertain[]"). Meanwhile, the challenge from a pipeline's competitor in *New York State Electric & Gas Corp. v. FERC*, was unripe because, unlike here, the petitioner had "not demonstrated that it suffered current hardship as a result of the orders under appeal." 177 F.3d 1037, 1042 (D.C. Cir. 1999). Moreover, the underlying rate case in *New York State Electric & Gas* had not yet been filed and "may not come to pass," *id.* at 1040, further counseling against immediate consideration.

In *Tennessee Valley Municipal Gas Ass'n v. FERC*, the challenger's petition was unripe because FERC needed to develop a record that "fully explores" additional facts. 140 F.3d 1085, 1088 (D.C. Cir. 1998) (per curiam) (citation omitted). By contrast, the only question for this Court to consider here is whether any portion of the system compressor replacement costs that were incurred, approved, and placed into service in 2021 can be allocated to expansion shippers on a 2023 project. GTN's petition is ripe.

## II. THE STATES CANNOT JUSTIFY DISPLACING GTN'S CHOSEN FORUM.

Venue is proper in this Court, where GTN is headquartered and where its senior business and legal personnel reside. Gibbon Decl. ¶ 1. GTN's venue choice is valid, *see* 15 U.S.C. § 717r(b), and this Court should not displace it.

Under 28 U.S.C. § 2112(a)(5), this Court may transfer GTN's petition "[f]or the convenience of the parties in the interest of justice." This Court, however, "generally refrain[s] from transferring a case and disturbing an aggrieved party's choice of forum." *Buckeye Partners, L.P. v. FERC*, No. 22-60100, 2022 WL 1528311, at *1 (5th Cir. May 13, 2022) (per curiam); *see also Tenneco Oil Co. v. EPA*, 592 F.2d 897, 900 (5th Cir. 1979) (per curiam) ("As a general rule, in the absence of unusual circumstances compelling transfer, courts have not exercised their inherent power to transfer to disturb a party's choice of forum.").

The States contend that GTN's forum choice should carry no weight because it is not truly aggrieved by FERC's orders. Mot. 19-21. Beyond that, the States argue that the D.C. Circuit is more-familiar with the issues in these cases and that the location of the Project, the parties, and counsel all weigh in favor of transfer. Mot. 22-24. The States are wrong across the board.

### A. GTN is substantially aggrieved by FERC's denial of predetermination.

"Where a party aggrieved by an order of the [agency] seeks review of that order, the court will generally respect the petitioning party's choice of forum."

*Liquor Salesmen's Union Local 2 of State of N.Y. v. NLRB.*, 664 F.2d 1200, 1204

(D.C. Cir. 1981). One exception is that a court will not respect a petitioner's forum

choice where "the first petition to review is filed by a party who is not substantially

aggrieved, in effect undercutting the assumption of a good faith petition to

review." *Id.* at 1205 (quoting *Public Serv. Comm'n v. FPC*, 472 F.2d 1270, 1272

(D.C. Cir. 1972)). Courts have emphasized, however, that only a "special case"

will warrant transfer on this ground. *See International Union, United Auto.*

*Aerospace & Agric. Implement Workers of Am., UAW-AFL-CIO v. NLRB*, 373

F.2d 671, 674 (D.C. Cir. 1967) (per curiam).

This case is not special. As explained, GTN risks either gambling tens of

millions of dollars on the outcome of its pending rate case or suffering substantial

transactional costs and competitive harms by attempting to re-negotiate previously

negotiated precedent agreements with its expansion shippers. Gibbon Decl. ¶¶ 8-

11. The States say (at Mot. 20) that GTN has suffered only "a minor shortfall in

relief," but millions of dollars in harms constitutes aggrievement by any measure.

*See In re Parmalat Sec. Litig.*, No. 04 MD 1653(LAK), 2007 WL 1169217, at *2

(S.D.N.Y. Apr. 18, 2007) ("To paraphrase the late Senator Everett Dirksen, 'a

million here, a million there. Pretty soon it adds up to real money.' ").

The States' real argument appears to be that they are *more* aggrieved by

FERC's orders because they want to stop the Project in its entirety while GTN only

17

challenges FERC's rulings regarding rate design.  *See* Mot. 19-21.  But courts have long warned that it is "inappropriate to compare the relative aggrievement of [the parties], where both are substantial."  *Oil, Chem. & Atomic Workers Local Union No. 6-418, AFL-CIO v. NLRB*, 694 F.2d 1289, 1300 (D.C. Cir. 1982) (per curiam) (quoting *Liquor Salesmen's*, 664 F.2d at 1206).  For good reason:  Attempting to compare petitioners' relative aggrievement would require "delv[ing] into the merits of the underlying dispute" as part of a transfer motion, creating "an appeal within an appeal."  *Liquor Salesmen's*, 664 F.2d at 1208.  Even where a petitioner "received 99.5% of" the relief it requested, a 0.5% shortfall is sufficiently substantial to respect the petitioner's forum choice.  *Oil, Chem. & Atomic Workers*, 694 F.2d at 1300.

GTN was denied much more than 0.5% of what it requested.  True, GTN received the certificate of public convenience and necessity.  But the Project's financial viability turns on GTN's ability to recover its costs of construction, either through rolled-in rate treatment or through higher negotiated rates from existing or expansion shippers.  The Commission did not just deny GTN relief that was, "at best[,] ancillary to the dispute."  *Liquor Salesmen's*, 664 F.2d at 1208.  The Commission denied GTN something going to the core of the Project's financial health.

The States contend this Court's decision in *Formaldehyde Institute, Inc. v. U.S. Consumer Product Safety Commission* proves that GTN is not aggrieved because GTN's "predominant position and interest . . . is to bolster and uphold the actions of [an agency], not to attack it."  Mot. 20 (quoting 681 F.2d 255, 263 (5th Cir. 1982) (per curiam)).  But the States rip that quote out of context in two ways.  For one, the Court emphasized that it should "not . . . be understood as ruling that" its consideration of the petitioner's primary interest in defending the order under review was "sufficiently persuasive to mandate a transfer out of the court of first filing under the last sentence of section 2112(a)."  *Formaldehyde Inst.*, 681 F.2d at 263.  The Court instead noted that factor only under the "unusual" circumstances where the various petitions were filed nearly simultaneously, such that the Court was "unable to determine that any court has priority of filing over" this one and "the barest tipping of the scales in favor of venue in this Circuit becomes decisive." *Id.* at 262-264.

For another, *Formaldehyde Institute* was not carefully comparing various petitioners' interest in the rule.  Instead—consistent with other cases—the Court found that the petitioner was not actually challenging the rule at all; its petition and response to the motions to determine proper venue did not reveal "any basis on which [the petitioner] claim[ed] . . . relief" and did not assert any "legal or factual

19

error on the part of the [agency]." *Id.* at 263. *Formaldehyde Institute* does not support transfer.[4]

**B. The remaining Section 2112(a)(5) factors do not warrant transfer to the D.C. Circuit.**

Beyond aggrievement, the States insist (at Mot. 22-24) that two factors warrant depriving GTN of its chosen forum: (1) there are pending D.C. Circuit cases involving one of the same issues as this case, and (2) counsel, the agency, and the Project are located outside the Fifth Circuit. Neither does.

1. The States contend that *Buckeye Partners* compels transfer of GTN's petition to the D.C. Circuit because other cases in that court present one of the same issues as this case. Mot. 22-23. But as the States' quote reveals, *Buckeye Partners* found transfer appropriate in cases that have undergone appellate review in one court, are returned to the agency, and then are back on judicial review. 2022 WL 1528311, at *1. In those circumstances, "transfer to the original appellate court 'is necessary to maintain continuity in the total proceeding.' " *Id.* (quoting

_____

[4] Even if GTN is not substantially aggrieved—and, to be clear, GTN is—this Court should still "determine in its exercise of discretion that the convenience of the parties and the interest of justice demonstrate that the court should decline to transfer and instead entertain the case." *Liquor Salesmen's*, 664 F.2d at 1209 n.19. GTN's headquarters in this circuit warrants retaining the case and no other factor favors a D.C. Circuit forum. *See infra* pp. 21-22.

*Public Serv. Comm'n*, 472 F.2d at 1272).  But that is not this case, where GTN's certificate has never before been subject to judicial review.

The States instead "implicitly invoke[] a theory of specialization of tribunals," where the D.C. Circuit should hear these cases because it happens to have before it many cases presenting one particular issue also present in this case. *Public Serv. Comm'n*, 472 F.2d at 1272.  But "[t]hat is not what Congress has provided." *Id.*  The Natural Gas Act permits venue as much in this Court as the D.C. Circuit, 15 U.S.C. § 717r(b), and having all cases presenting a certain issue go to one court "would substantially thwart the development of important questions of law by freezing the first final decision rendered on a particular legal issue." *United States v. Mendoza*, 464 U.S. 154, 160 (1984).  In all events, one overlapping legal issue is no reason to transfer petitions that present issues well beyond the one issue that the States identify.  The Court is up to the task of deciding these cases.

2.  The States' final ground for transfer (at Mot. 24)—location of FERC, the attorneys, and the pipeline—is even more insubstantial.  The parties seeking transfer in *Formaldehyde Institute* similarly argued that the location of the agency and the attorneys should weigh heavily in the transfer analysis.  But this Court explained that where, as here, the agency takes no "position respecting venue (or transfer)," the fact "that the Commission is located in the District of Columbia" is

insignificant.  681 F.2d at 262.  Congress knew the Commission is located in the capital, yet "gave no preference to the District of Columbia as the venue for review of Commission orders."  *Id.*  This Court similarly held that "the location of the attorneys" is not "a significant basis for determining venue here."  *Id.*  What the Court *did* look at was the location of the parties.  *Id.* ("[T]he convenience of the parties, not of their counsel, is the more appropriate concern.").  And GTN is located here.  Gibbon Decl. ¶ 1.

That leaves the States' argument that venue should not lie here because the Project is located in the Ninth Circuit.  Mot. 24.  But many pipelines develop projects far from where they are headquartered or incorporated, and yet Congress did not name the circuit where the project is being built as a proper venue for challenges to FERC orders the way it did for challenges to non-FERC authorizations.  *Compare* 15 U.S.C. § 717r(b), *with id.* § 717r(d)(1).  The Project's situs in the Ninth Circuit—where no one could have filed a petition—cannot tip the transfer scales in favor of the *D.C.* Circuit.

**CONCLUSION**

The Court should carry the States' motion to dismiss with the case and deny the motion to transfer.

Respectfully submitted,

/s/ Sean Marotta
Sean Marotta
Matthew J. Higgins
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004
Telephone: (202) 637-4881
sean.marotta@hoganlovells.com

Johannah Walker*
HOGAN LOVELLS US LLP
4 Embarcadero Center, Suite 3500
San Francisco, CA 94111

*Admitted in the District of Columbia and Arkansas. Practice supervised by principals of the Firm admitted in California.*

*Counsel for Gas Transmission Northwest, LLC*

May 6, 2024

## CERTIFICATE OF COMPLIANCE

1.      This document complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) because it contains 5,137 words, excluding the parts of the motion exempted by Fed. R. App. P. 32(f).

2.      This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365 in Times New Roman 14-point font.

<u>/s/ Sean Marotta</u>
Sean Marotta

**CERTIFICATE OF SERVICE**

I certify that on May 6, 2024, the foregoing was electronically filed through this Court's CM/ECF system, which will send a notice of filing to all registered users.

/s/ Sean Marotta
Sean Marotta